**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION

**Case Number:**

RYAN, LLC, a Delaware
Limited Liability Company,

Plaintiff,

v.

ANDRES E. VENGOECHEA, individually, and
PROPERTY TAX FORCE, LLC, a Florida
Limited Liability Company,

Defendants.

_____/

**COMPLAINT**

Plaintiff, Ryan, LLC, by and through its undersigned counsel, hereby files this Complaint

against Defendants Andres E. Vengoechea and Property Tax Force, LLC. In support, Plaintiff

states as follows:

**NATURE OF THE ACTION**

1.       This action arises out of a multi-year scheme by a Miami-based tax appeals

professional, Andres E. Vengoechea ("Vengoechea"), to grow and operate his own competing

property tax appeals business, Property Tax Force, LLC ("PTF," and together with Vengoechea,

"Defendants"), while employed by Ryan LLC ("Plaintiff" or "Ryan") and at great expense to Ryan.

2.       Vengoechea conducted this scheme while relying on Ryan's business relationships,

incoming proposals, proprietary software, confidential information, and trade secrets, to field

incoming client requests, and divert business away from Ryan and instead to himself and PTF.

The self-dealing was malicious and willful, with Defendants' use of Ryan's name and logo to

solicit, service, and ultimately divert hundreds of tax appeal petitions from Ryan to Defendants.

3.     Through public-record audio/video recordings and documents obtained through Miami-Dade County, Ryan confirmed that Vengoechea has personally appeared and advocated before the Miami-Dade County Value Adjustment Board ("VAB") proceedings for matters filed under PTF, but doing so through use of Ryan's proprietary and confidential information and trade secrets, and with Ryan's logo appearing prominently on the appeals packages.

4.     These extensive public records also show that Vengoechea's conduct occurred while simultaneously managing Ryan's Florida practice, during hours the VAB would otherwise be hearing tax appeals for Ryan, in a stunning breach of Vengoechea's fiduciary duty of loyalty, all to enrich himself and PTF at Ryan's expense.

5.     This action seeks damages and equitable relief arising from Defendants' misconduct and self-dealing, and seeks to prohibit further harm to Ryan.

## THE PARTIES

6.     The Plaintiff Ryan, LLC, is a professional services firm based in Plano, Texas, that provides an integrated suite of federal, state, local, and international tax services, among other things, and, as related to this action, property tax consulting services in Florida, including Miami-Dade County. Ryan is a Delaware limited liability company.

7.     Defendant Andres E. Vengoechea is an individual residing in Miami-Dade County, Florida, who served as Ryan's Director of Commercial Property Tax and managed Ryan's office in Miami-Dade County, within the Southern District of Florida, from approximately early January 2023 through mid-January 2026.

8.     Defendant Property Tax Force, LLC is a Florida limited liability company associated with real estate and property tax appeal services; the entity is registered in Florida and has been in business since 2017. Public records reflect that Silvana Arcaute, who, on information

and belief, is Vengoechea's wife, is the Manager and is listed as an authorized person on Florida State filings, while Vengoechea exercises control over and operates the company.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331 based on the Defend Trade Secrets Act, 18 U.S.C. § 1836.

10.     This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all other claims in this action as they are so related and derive from a common nucleus of operative facts that they form part of the same case or controversy as the federal claim. None of the supplemental claims present novel or complex questions of law or predominate over the federal claim.

11.     This Court has personal jurisdiction over Vengoechea because, during all relevant times, he resided in Miami-Dade County, Florida; he also during all relevant times, operated, conducted, engaged in, or carried on a business or business venture in Florida, committed tortious acts within Florida, and/or breached a contract in Florida by failing to perform acts required by the contract to be performed in Florida. Accordingly, this Court has personal jurisdiction under Fla. Stat. § 48.193(1)(a) 1., 2., and 7., and exercising jurisdiction comports with due process.

12.     This Court has personal jurisdiction over PTF because PTF is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida, and engages in substantial and non-isolated activity in Florida. *See* Fla. Stat. § 48.193(2). Exercising jurisdiction comports with due process.

13.     Ryan's claims arise from Defendants' Florida conduct. Thus, venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in Miami-Dade County. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) because both Defendants are residents of the State of Florida,

3

and at least one Defendant resides in this judicial district.

## FACTUAL ALLEGATIONS
### Ryan's Business and Vengoechea's Role

14. Ryan is a leading provider of tax advisory services.

15. Over years of investment and experience, Ryan has developed a set of highly valuable proprietary and confidential methodologies, models, workflows, know-how, analytical frameworks, and process innovations, which are critical to its business interests and success, among other things (the "Trade Secrets").

16. These Trade Secrets are non-public, commercially valuable information, including: client specific valuation models and calibrations; curated compilations of property, market, and assessment data; non-public pricing strategies, margin targets, and proposal templates; client pipelines, opportunity forecasts, and engagement strategies; proprietary petition templates and analyses; internal methodologies and workflows for preparing VAB petitions and advocacy; configurations, outputs, and customized software and tools, including licensed datasets integrated into Ryan's analytical work product; and other proprietary programs.

17. These Trade Secrets, information and programs are of great economic value to Ryan, and similarly, would be of great economic value to competitors who obtained its information.

18. Ryan takes reasonable care to protect its Trade Secrets and limits access to protect their confidentiality and secrecy.

19. Additionally, Ryan has policies and procedures governing employee access to and use of its Trade Secrets, other confidential information, and the devices and systems where the Trade Secrets are maintained.

20. Vengoechea was introduced to Ryan when he was employed as a tax appraisal

specialist at Paradigm, Inc. ("Paradigm"), a tax appraisal firm acquired by Ryan. In that acquisition, Ryan acquired, *inter alia*, Paradigm's business contacts and agreements.

21.     In a meeting on or about November 20, 2022, Vengoechea discussed his entity, PTF, but assured the Principal(s) at Ryan that it would not impact or otherwise involve Ryan's business, and represented that PTF was not and would not be a competitor to Ryan.

22.     This meeting with Vengoechea occurred via phone conversation and through email on or about November 20, 2022. The meeting was in the context of his potential future employment with Ryan and in negotiation of Ryan's offer of employment for a leadership position as Director of Commercial Property Tax. This role included the responsibility of managing Ryan's Miami office, leading a team of professionals to support its property tax appraisal business, and building Ryan's Florida business.

23.     Vengoechea knew these statements were false when made and that the statements he made were made for Ryan to rely upon them in its offer of employment to him. Plaintiff reasonably relied on Vengoechea's false statements to its detriment.

24.     As part of the acquisition, Ryan onboarded certain Paradigm personnel, including Vengoechea. On or about December 17, 2022, a Ryan Director spoke with Vengoechea about his potential future with Ryan and Ryan's offer of employment on or about January 1, 2023.

25.     At the time Ryan affirmed its employment offer to Vengoechea during the meeting on or about December 17, 2022, Vengoechea again represented that PTF would not compete with Ryan or divert Ryan's clients, specifically representing that PTF only handled small, unwanted matters. Vengoechea knew these statements were false when made and the statements were made for Ryan to rely upon them. Plaintiff reasonably relied on Vengoechea's statements to its detriment.

26.     Vengoechea represented that prior, he/PTF only took business that Paradigm, Inc. did not want or that were too small to be of interest to Ryan. Vengoechea knew this representation of past conduct and existing fact was false. Ryan reasonably relied on these false representations to its detriment.

27.     But for these representations, Ryan would not have employed Vengoechea as its Director of Commercial Property Tax, would not have given him access to confidential systems, sponsoring his leadership trajectory, and entrusting him to run the Miami office only to later discover through public records that he had been filing and arguing hundreds of petitions through PTF while he was employed by Ryan and during business hours.

### *Vengoechea's Employment and Duties*

28.     On or about January 1, 2023, Vengoechea began working for Ryan as an at-will employee.

29.     Vengoechea was aware of Ryan's non-compete provisions contained in his Confidential & Proprietary Information & Inventions Assignment Agreement ("Employment Agreement"), which he read and signed on or about January 9, 2023. A true and correct copy of Vengoechea's Employment Agreement is attached as **Exhibit A;** Vengoechea's attestation that he read, understood, and agreed to the terms therein is attached as **Exhibit B**.

30.     Vengoechea accepted the offer of employment, the terms set forth in the Employment Agreement, and the fiduciary duties the role entailed.

31.     Vengoechea's Employment Agreement began with the following Acknowledgements:

> The undersigned ("Team Member") acknowledges that Ryan LLC, including all of its subsidiaries and affiliates (collectively, the "Company") has expended and will continue to expend substantial time, money, effort, and other resources to develop its goodwill, confidential information, trade secrets, and methods of doing business and that the Company has a legitimate business interest in protecting

same. Team Member further acknowledges that such confidential information, trade secrets, and proprietary methods provide the Company with a competitive advantage in the marketplace and are kept confidential and not shared except with those Team Members with a need to know them. Team Member further acknowledges that Team Member will be provided certain confidential information, Company secrets, and proprietary information not generally known or available to the Company's competitors or the general public. Team Member further acknowledges that such goodwill, confidential information, trade secrets, and proprietary methods provide the Company with a means to (i) attract, retain, and motivate Team Member to remain an Team Member of the Company, (ii) promote productivity, and (iii) attract, retain, and motivate a stable, competent, and specialized workforce.

**Exhibit A at 1.**

32.     Vengoechea's Employment Agreement further included the following relevant provision:

**1. Nondisclosure of Confidential Information**
Team Member agrees that (i) the goodwill of Company depends upon, among other things, keeping the Confidential Information (as defined below) confidential and that unauthorized disclosure of the Confidential Information would irreparably damage Company, and (ii) disclosure of any Confidential Information to competitors of Company or to the general public would be highly detrimental and cause irreparable damage to Company.

Upon execution of this Agreement, and without regard to Team Member's continued employment status, the Company shall be unconditionally obligated to, and shall, provide Team Member with new and additional elements of the Company's confidential and proprietary business information (the "Confidential Information"). The Confidential Information may include, without limitation, information relating to persons, firms, and corporations that are or become customers or accounts of the Company during the term of Team Member's employment with the Company ("Customers") and persons, firms, and corporations that are actively solicited by the Company during the term of Team Member's employment with the Company to become Customers ("Prospects"), including the names of Customers and Prospects, lists of Customers and Prospects, personal information as to Customers and Prospects, familiarity with Customers' and Prospects' specific tax needs and financial considerations, trade secrets and other of the Company's business information that is not generally or easily obtainable, including specific engagement procedures, techniques, tax saving and mitigation strategies, internal procedures, programs, regular business reports, business plans, projections, budgets, financial information, specific information regarding proposals to Prospects and Customers, and all records, files, manuals, blanks, forms, materials, supplies, computer programs, and other materials

7

furnished to Team Member by the Company. All Confidential Information shall be and remain the property of the Company, and Team Member shall safely keep and preserve such property.

In consideration of the training and support provided by the Company to Team Member, and the compensation and other consideration to be paid to Team Member under this Agreement, **Team Member agrees that Team Member will not, without the written consent of the Company, disclose or make any use of such Confidential Information except as may be required in the course of rendering services under this Agreement**. Further, Team Member agrees to immediately deliver to the Company all Confidential Information and all copies thereof upon termination of employment. In the event the laws of the State applicable to the enforcement of this Section impose a reasonable time limitation, the period shall be deemed to be the term of Team Member's employment with the Company and for twenty-four (24) months thereafter.

**Exhibit A § 1** (emphases added).

33.     Vengoechea's Employment Agreement also included the provisions on his duty of loyalty, which at a minimum put him on notice of the existence of this duty.

> **2. Duty of Loyalty**
> During the Team Member's employment with the Company, Team Member will avoid conflicts of interest, remain loyal to the Company, and **will not knowingly compete with it or otherwise engage in any conduct harmful to the business interests of the Company**.

**Exhibit A § 2** (emphases added).

34.     Vengoechea's Employment Agreement also provided clear language that neither he nor PTF could solicit Ryan's clients or business prospects.

> **6. Non-Solicitation of Customers or Prospects**
> During the term of Team Member's employment with the Company and for twenty-four (24) months thereafter, Team Member **will not, without the written consent of Company, directly or indirectly, in any individual or representative capacity whatsoever or through any form of ownership, solicit, induce or attempt to induce any Customer or Prospect, in North America and/or Europe** (i) with whom Team Member had any business contact during the twenty-four (24) months preceding termination of employment with the Company or (ii) about whom Team Member learned Confidential Information as a result of the employment, to withdraw, curtail, divert, or cancel any Client's business or Prospect's prospective business with Company or in any manner modify or fail to enter into any actual or potential business relationship with Company.

**Exhibit A § 6** (emphases added).

35. Finally, Vengoechea's Employment Agreement contained a fee-shifting provision that should Ryan be forced to seek injunctive relief to restrict actual or threatened violations of the Employment Agreement, it shall be awarded all reasonable attorneys' fees and costs associated with obtaining the injunctive relief.

> **11. Enforcement of Agreement**
> Team Member hereby expressly acknowledges that the loss of value to the Company, due to the violation or threatened violation of the covenants herein contained, cannot be estimated with any certainty and cannot be fairly and adequately compensated by damages and that the Company's loss through violation of this Agreement may be enforced by injunctive relief to which the Company shall be entitled in addition to any other rights which the Company may possess. **Team Member further hereby stipulates and admits that such injunctive relief is absolutely necessary because immediate, ongoing, and irreparable injuries, unfair competition, or damages will result to the Company in the event of a violation or threatened violation of any of the covenants made herein and that the restraints set forth in this Agreement are reasonable and fair** and in the event a court determines otherwise, the parties agree that the court is authorized and will be requested by both parties to revise the scope of the restraint, including adding new or different language, so as to make the restraints reasonable and enforceable. In the event the Company is forced to seek injunctive relief to restrict the violation or threatened violation of any such covenant by the Team Member and Team Member's partners, agents, servants, employers, and all persons acting for or with Team Member and to enforce the provisions of this Agreement and the Company prevails in such action, **Team Member agrees to pay the Company its costs, including reasonable attorneys' fees, for obtaining such injunctive relief.** In the event Company seeks an injunction to enforce its rights under this Agreement, bond in the amount of $1,000 shall be adequate security for such injunctive relief.

**Exhibit A § 11** (emphases added). Sections 1, 2, and 6 of the Employment Agreement will be referred to herein as the Non-Disclosure, Non-Compete, and Non-Solicitation provisions, respectively, and together will be referred to as the "Restrictive Covenants."

36. Vengoechea, as Director of Commercial Property Tax, was a trusted and elevated employee at Ryan. As a Director, Vengoechea was placed in the second highest salary tier, just below Principal, which is an equity-level position. In the course of his employment, Vengoechea

9

had access to Ryan's Trade Secrets and other confidential information.

37.     As a senior leader, Vengoechea owed Ryan fiduciary duties of loyalty, care, and good faith, including the duty to avoid competing with Ryan, to refrain from self-dealing, and to use Ryan's confidential and proprietary information solely for Ryan's benefit. In addition, pursuant to section 2 of his Employment Agreement, Vengoechea owed Ryan a contractual duty of loyalty.

38.     Ryan reposed great confidence and trust in Vengoechea, and sponsored him through the company's leadership program. Vengoechea was on his way to becoming a principal, with a "buy in" planned for on or about November 2026.

### Vengoechea's Misconduct

39.     On or about November 17, 2025, management at Ryan began to become suspicious of Vengoechea's conduct and had reason to believe that he was in fact competing with Ryan while an employee, and with his misconduct occurring during work hours.

40.     This suspicion was later corroborated by records and video recordings Ryan obtained through Public Records requests, which are ongoing.

41.     Ryan's investigation identified approximately 459 petitions PTF and Vengoechea filed in 2024 alone. The petitions were property tax assessment appeals submitted to the VAB — the exact type of client engagements that Vengoechea was hired to develop, service, and manage for Ryan.

42.     Ryan has since learned of at least 555 appraisal appeal filings that Defendants filed during Vengoechea's employment with Ryan and specifically from July 13, 2022 through January 15, 2026. This time period includes Ryan's early acquisition of Paradigm.

43.     Of those approximately 555 appraisal appeal filings, about 510 were appeals that

fit squarely within Ryan's economic model. The sheer volume and composition of these filings show that Defendants' competing operation was not incidental, but a sustained scheme largely built on opportunities diverted from Ryan as discussed in the representative VAB petitions below.

44.     The VAB petitions obtained reveal that Vengoechea and PTF's filings fit squarely within Ryan's business and revenue model. These were not client engagements that Ryan would have rejected; rather, these client engagements included large commercial properties valued at millions of dollars with petitions for appraisal reductions for millions of dollars—the exact type of properties that Vengoechea in his role as Director of Commercial Property Tax was responsible for servicing and procuring on behalf of Ryan. True and correct copies of two representative petitions are attached hereto as Exhibits C and D.

45.     In one petition before the VAB, Petition No. 2024-11287, Vengoechea and PTF pursued a reduction of over $11,000,000.00 in a client's property appraisal, which included the submission of documents prominently bearing Ryan's logo and use of its confidential, proprietary, and licensed information, including a cost approach analysis, income approach analysis, lease analysis, and comps as required by the VAB. See Exhibit C, at pp. 13, 54, and 56-69. These analyses were developed through the misappropriation of Ryan's Trade Secrets, and the fees associated with this over $11,000,000.00 reduction in appraised value fit squarely within Ryan's business and revenue model.

46.     Petition No. 2024-11313 shows Vengoechea and PTF pursuing a reduction of about $2,100,000.00 in a commercial client's property appraisal, again submitting related documents prominently bearing Ryan's logo and use of its confidential, proprietary, and licensed information. See Exhibit D, at pp. 10-16, 28-42. These analyses were developed through the misappropriation of Ryan's Trade Secrets, and the fees associated with this about $2,100,000.00 reduction in

appraised value also fit squarely within Ryan's business and revenue model.

47.  Ryan implements a performance-based fee model tied to achieved tax savings. In the Miami-Dade property tax context, even "routine" matters can generate significant fees. Vengoechea and PTF's diversion of hundreds of petitions materially harmed Ryan in lost opportunities, lost revenues, and through the interference with its business relationships and goodwill in the market.

48.  On information and belief, Vengoechea and PTF offered or accepted rates lower than those Ryan typically charged for comparable services, which affected Ryan's ability to compete for certain opportunities in its pipeline and diverted the revenue associated with that work.

49.  As Director of Commercial Property Tax, Vengoechea was familiar with Ryan's pricing structure and service offerings. While employed by Ryan, Vengoechea provided similar services to certain of Ryan's clients at a discounted rate while using Ryan's proprietary and licensed programs, thereby diverting business opportunities away from Ryan and to himself and PTF.

50.  Ryan has also obtained video and audio recordings through its extensive public records requests. These recordings establish Vengoechea's presence at and personal advocacy before the VAB as part of the appeals process. His attendance occurred during business hours while he was obligated to work on behalf of Ryan.

51.  Emails confirm Vengoechea's deliberate diversion of Ryan's business. Vengoechea received incoming inquiries from clients, and affirmatively confirmed and controlled whether the opportunity belonged to Ryan or to his own entity, PTF, thereby establishing a rerouting system for client engagements to himself and for his personal benefit, rather than to Ryan. A representative correspondence is attached demonstrating Vengoechea's use of parallel

12

correspondence to divert and control engagements through PTF. See Exhibit E.

52.     Vengoechea understood that his conduct violated his duties and could result in his termination. On or about January 15, 2026, a Ryan Principal and the Southeast Regional Director came to the Miami office to administer Vengoechea's for-cause termination based on Ryan's findings discussed herein. Upon entering the conference room, Vengoechea said that he knew what was coming next. Vengoechea did not dispute Ryan's findings or the for-cause nature of his termination or Ryan's decision. Upon the conclusion of his termination, and after management for Ryan advised Vengoechea that it became aware of his conduct, including the rampant tax appraisals petitions he diverted, Vengoechea simply said that he "took a risk and it did not go [his] way," indicating that his conduct was knowing and intentional.

### *Harm*

53.     PTF remains in operation, Vengoechea retains his appraisal license, and both Defendants remain involved in the real estate industry in Miami-Dade County. Meanwhile, Ryan is currently without a Director to lead its Miami office and operations.

54.     The threat to Ryan's business remains. Ryan is currently assessing the extent of the misappropriation of its Trade Secrets, the documents taken, the total number of petitions Defendants submitted to the VAB while Vengoechea was employed by Ryan, lost revenues, diverted engagements, and the improper competition Ryan was and is still exposed to.

55.     To the extent any claim overlaps with alleged trade-secret misappropriation, Ryan pleads such claims in the alternative. Ryan's contract, fiduciary-duty, unjust enrichment, tortious interference, and conspiracy claims are grounded in duties and conduct independent of any violations of trade secrets statutes, and seek no duplicative recovery.

### COUNT I – BREACH OF CONTRACT
*(Against Defendant Vengoechea)*

13

56.     Ryan realleges and incorporates paragraphs [1-55] as if fully set forth herein.

57.     This claim is brought under Texas law pursuant to the Employment Agreement's choice of law provision.

58.     Vengoechea's Employment Agreement was at all times valid and enforceable, including the Non-Disclosure, Non-Compete, and Non-Solicitation provisions.

59.     Vengoechea breached the Non-Compete provision by directly and knowingly competing with Ryan in Miami property tax appeals services, evidenced in part by the submission of approximately 459 petitions through Defendants to the VAB in 2024 alone, which was harmful to the business interests of Ryan. These actions prevented Ryan from receiving its promised benefits under the Employment Agreement.

60.     Vengoechea breached the Non-Disclosure provision by utilizing Ryan's Trade Secrets and confidential information for his own benefit and facilitating or enabling Ryan's Trade Secrets and confidential information to be used by PTF, Ryan's direct competitor. Specifically, Vengoechea utilized Ryan's Trade Secrets and confidential information in preparing petitions for PTF, evidenced in part by Ryan's logo and templates appearing in petitions submitted by Defendants. See Exhibits C and D. This prevented Ryan from receiving its promised benefits under the Employment Agreement.

61.     Vengoechea breached the Non-Solicitation provision by soliciting Ryan's prospective and/or existing customers without the written consent of Ryan, diverting business opportunities away from Ryan. Vengoechea did so in part by offering or accepting rates lower than those Ryan typically charged for comparable services. This prevented Ryan from receiving its promised benefits under the Employment Agreement.

62.     Ryan satisfied all conditions required of it under the Employment Agreement.

14

63. The breaches committed by Vengoechea were material under the Non-Disclosure, Non-Compete, and Non-Solicitation provisions, as they support immediate termination without notice, a grace period, or time to cure.

64. These breaches were also material due to the extent Ryan has been deprived of the benefits of the Employment Agreement it reasonably anticipated.

65. Vengoechea's breaches of the Employment Agreement have caused substantial harm to Ryan. Consequently, Ryan seeks compensatory damages for lost profits, diverted opportunities, and costs associated with this action as provided for in the Employment Agreement in an amount to be determined at trial.

66. As Vengoechea's breaches will continue to cause irreparable harm to Ryan and cannot be compensated for by monetary damages alone, Ryan seeks injunction relief to prevent further breaches of Vengoechea's post-employment contractual obligations found in the Non-Solicitation and Non-Disclosure provisions.

67. Ryan also seeks to recover its reasonable attorneys' fees for bringing claims against Vengoechea for his breaches of the Employment Agreement. See Tex. Civ. Prac. & Rem. Code § 38.001(8); Ex. A § 11.

**COUNT II – UNJUST ENRICHMENT**
***(Against Defendants Vengoechea and PTF)***

68. Ryan realleges and incorporates paragraphs [1-55] as if fully set forth herein.

69. This claim is brought under Florida common law.

70. This Count is pled in the alternative to Count I as to Vengoechea, to the extent the Court determines that Vengoechea's conduct falls outside of the scope of the Employment Agreement, or any other express agreement between Ryan and Vengoechea.

71. Ryan conferred substantial benefits that Defendants knowingly accepted and

retained without compensation to Ryan, including revenues and business opportunities that Defendants diverted from Ryan, and the use of Ryan's brand, relationships, and goodwill to generate fees for PTF and Vengoechea.

72.     Ryan did not enter into any express or implied contract or any form of an agreement to reflect this conferral of benefits to either Vengoechea or PTF.

73.     The benefits Ryan conferred on to Defendants were not conferred gratuitously and were outside of any authorized agreement or compensation between the parties. Defendants have knowingly obtained and retained these benefits without authorization, agreement, or compensation, to Ryan's detriment.

74.     Vengoechea's enrichment exceeds what the Employment Agreement contemplated.

75.     Defendants knowingly and voluntarily accepted, retained, and leveraged these Ryan-derived benefits and assets to solicit, file, and pursue property tax appeals through PTF, and to generate fees and revenue for PTF and Vengoechea at Ryan's expense.

76.     It would be inequitable for Defendants to retain the value obtained from their diversion of Ryan's business opportunities, exploitation of Ryan's brand and goodwill, and misuse of company time and resources, independent of any Trade Secret content.

77.     Therefore, Ryan is entitled to restitution and disgorgement of Defendants' unjust profits, jointly and severally, together with such other equitable relief as the Court deems proper.

### COUNT III – BREACH OF FIDUCIARY DUTY
#### (*Against Defendant Vengoechea*)

78.     Ryan realleges and incorporates paragraphs [1-55] as if fully set forth herein.

79.     This claim is brought under Florida common law.

80.     As a senior leader and Director of Commercial Property Tax, Vengoechea occupied

a position of trust and confidence at Ryan, which reposed confidence in Vengoechea by entrusting him with significant responsibilities over client engagements, revenue management, and business development. Ryan relied on him to act in its best interests.

81.     By virtue of the trust reposed in him, Vengoechea owed fiduciary duties of loyalty and care, including duties to act in Ryan's best interests, to refrain from self-dealing, avoid conflicts of interest, and not divert or usurp Ryan's business opportunities. This duty arises from Vengoechea's position of trust and confidence that Ryan reposed in him.

82.     Vengoechea breached these fiduciary duties by operating and promoting PTF while employed by Ryan; usurping corporate opportunities; diverting current and/or prospective client engagements; and misusing Ryan's time, resources, and his position of trust to directly compete with Ryan—independent of any alleged Trade Secret misappropriation.

83.     Vengoechea's conduct was disloyal, conflicted, and undertaken for his own benefit at Ryan's expense and to its detriment.

84.     Admissions Vengoechea made upon his termination demonstrate that he knowingly engaged in the wrongful conduct.

85.     Vengoechea's breaches of his fiduciary duties were intentional and willful. As a direct and proximate result of these breaches, Ryan has and will continue to suffer substantial damages in the form of lost revenue, lost profits, loss of goodwill, and other compensable harm.

86.     Ryan is entitled to compensatory and punitive damages and equitable relief, including disgorgement and injunctive relief.

## COUNT IV – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (*against PTF*)

87.     Ryan realleges and incorporates paragraphs [1-55; and 78-86] as if fully set forth herein.

88.     This claim is brought under Florida common law.

89.     As alleged in Count III, Vengoechea owed fiduciary duties to Ryan, which he breached by competing with and diverting Ryan's business opportunities while an employee.

90.     PTF's use of Ryan's assets included the prominent use of the Ryan logo in the petitions it filed with the VAB, and demonstrates that PTF knew of Vengoechea's breaches of fiduciary duty and wrongful conduct.

91.     With that knowledge, PTF substantially assisted and encouraged Vengoechea's breaches by serving as the vehicle through which clients were diverted, tax appeals petitions were filed and argued, and by accepting fees generated from the opportunities diverted from Ryan.

92.     PTF's substantial assistance caused Ryan to suffer damages.

93.     Ryan seeks compensatory and punitive damages, and equitable relief including disgorgement of profits unjustly obtained by PTF and injunctive relief.

### COUNT V  - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
*(Against Defendants Vengoechea and PTF)*

94.     Ryan realleges and incorporates paragraphs [1-55] as if fully set forth herein.

95.     This claim is brought under Florida common law.

96.     Ryan developed and maintained an extensive network of ongoing and prospective business relationships in the Miami-Dade property tax appeals market, which generates economic benefit to Ryan, and which carries a reasonable expectancy of continuing business and revenue through these relationships.

97.     By virtue of his role as Director of Commercial Property Tax, and his management responsibilities, Vengoechea had knowledge of Ryan's existing and prospective business relationships. PTF learned of Ryan's ongoing and prospective business relationships through Vengoechea.

18

98.     Vengoechea, acting individually and through PTF, intentionally and unjustifiably interfered with Ryan's business relationships by diverting inquiries, client engagements, and opportunities away from Ryan and to PTF.

99.     Defendants further interfered by knowingly undercutting Ryan's pricing, soliciting and diverting active and prospective client engagements, and passing off their competing services using the access and leverage derived from Vengoechea's role at Ryan.

100.     Defendants operated and cultivated a competing enterprise within Ryan's Miami office while Vengoechea was an employee, exploiting Ryan's business relationships and violating industry norms. This was done intentionally, without justification, and contrary to industry norms causing loss of goodwill and irreparable harm to Ryan. Defendants' conduct was independent of any alleged Trade Secret misappropriation.

101.     Defendants' intentional and unjustified interference has caused and will continue to cause Ryan to suffer substantial damages including lost revenues, lost profits, diverted business opportunities, and harm to its goodwill independent of any conduct that may constitute trade secret misappropriation.

102.     Accordingly, Ryan is entitled to compensatory, punitive, and exemplary damages, jointly and severally, and all available legal and equitable relief including disgorgement, and any other relief this Court deems just and proper.

### <u>COUNT VI – CONVERSION</u>
*(Against Defendants Vengoechea and PTF)*

103.     Ryan realleges and incorporates paragraphs [1- 55] as if fully set forth herein.

104.     This claim is brought under Florida common law.

105.     While employed by Ryan, Vengoechea was entrusted with exclusive access to and control over Ryan's incoming appraisal requests, client communications,  and client engagement,

including through materials maintained in Ryan's systems.

106.    The converted and identifiable property at issue includes Ryan's tangible business property independent of any alleged Trade Secrets, and includes incoming appraisal requests, proposals, petitions, reports, spreadsheets, templates, client contacts, client communications, client engagement documents, intake workflow documents, business records, and other records, files, and communications.

107.    At all times, Ryan had a right to possess and control the converted property and never consented to Defendants' use of such property.

108.    Vengoechea willfully and maliciously exercised dominion and control over Ryan's property by intercepting, withholding, diverting and repurposing the converted property for Defendants' benefit and to the detriment of Ryan hundreds and potentially thousands of times.

109.    Vengoechea then shared the converted property with PTF, which knew or should have known that the property was wrongfully obtained and used without Ryan's consent.

110.    This claim for conversion pertains to property interests separate and distinct from any information protected or pleaded under trade secrets laws.

111.    Defendants' conversion was inconsistent with Ryan's rights, and damaged Ryan causing it substantial injury and loss in the form of diverted opportunities and revenue. Consequently, Ryan is entitled to compensatory and punitive damages, jointly and severally, and equitable relief, and any such other relief this Court deems just and proper.

## COUNT VII – VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT
### ("FUTSA"), Fla. Stat. § 688.001 *et seq.*
(*Against Defendants Vengoechea and PTF*)

112.    Ryan realleges and incorporates paragraphs [1-55] as if fully set forth herein.

113.    This claim is brought under Florida statutory law.

114.    Ryan possesses and is the lawful owner of its Trade Secrets. Vengoechea acknowledged Ryan's ownership of its Trade Secrets in his Employment Agreement, which Ryan made clear and unmistakable as the very first provision governing Vengoechea's Employment Agreement. See Exhibit A § 1.

115.    Ryan's Trade Secrets are within the meaning of Fla. Stat. § 688.002(4) and include "specific engagement procedures, techniques, tax savings and mitigation strategies, internal procedures, programs, budgets, financial information, specific information regarding proposals to Prospects and Customers" and additional Trade Secrets as enumerated in his Employment Agreement. See Exhibit A § 1.

116.    Ryan's Trade Secrets are also within the meaning of § 688.002(4) because they derive actual or potential independent economic value from not being generally known to or readily ascertainable by proper means by persons who can obtain economic value from their disclosure or use, including competitors.

117.    Ryan has expended significant time, money, effort, and resources to develop its Trade Secrets, an additional fact Vengoechea acknowledged.

118.    Ryan undertook reasonable efforts to maintain the secrecy of its Trade Secrets, including but not limited to maintaining written agreements, restrictive covenants, implementing contractual confidential and proprietary use agreements, requiring its employees—including Vengoechea—to acknowledge its ownership and protections, and in forewarning Vengoechea it would seek injunctive relief if necessary to restrict violations of the Employment Agreement, including misappropriation of its Trade Secrets. See Exhibit A §§ 1, 11.

119.    Vengoechea misappropriated Ryan's Trade Secrets by acquiring, disclosing, and using them through improper means within the meaning of Fla. Stat. § 688.002(2)(a), (b).

120.     PTF also misappropriated Ryan's Trade Secrets by its acquisition, use, and disclosure of them, through Vengoechea, who had an ongoing duty to protect and maintain Ryan's Trade Secrets, a fact made apparent in the overt use of Ryan's programs, specific engagement procedures, techniques, tax savings and mitigation strategies, internal procedures, programs, and other related Trade Secrets which PTF used notwithstanding the branded nature of certain documents bearing the Ryan logo; a clear reason to know the Trade Secret was misappropriated. See Fla. Stat. § 688.002(2)(b).

121.     Ryan did not give consent—express or implied—nor authorization for use or disclosure of its Trade Secrets.

122.     The misappropriation was willful and malicious, as demonstrated by its vast scope—hundreds of petitions—and the execution during business hours which included Vengoechea's personal attendance at hearings before the VAB relying on Trade Secrets misappropriated from Ryan, petition packages submitted by PTF that prominently bore Ryan's logo, and demonstrated by Vengoechea's personal admission upon termination that he "took a risk and it did not go [his] way."

123.     As set forth above, Defendants have willfully and maliciously misappropriated Ryan's Trade Secrets. As a direct result of Defendants' misappropriation, Ryan has suffered and will continue to suffer substantial damages.

124.     Consequently, Ryan is entitled to

   a.   an award of damages for the actual loss caused by Defendants' misappropriation and the resulting unjust enrichment not taken into account in computing actual loss as provided for in Fla. Stat. § 688.004(1);

   b.   alternatively, an award of damages through the imposition of liability for a

22

reasonable royalty for Defendants' unauthorized disclosure or use of Ryan's Trade Secrets if actual damages are hard to quantify under § 688.004(1);

c. an award of exemplary damages for not more than twice the amount of any award made under subsection (1) due to Defendants' willful and malicious misappropriation under § 688.004(2);

d. an award of attorneys' fees under § 688.005;

e. injunctive relief for Defendants' actual and/or threatened misappropriation of Ryan's Trade Secrets under § 688.003(1) and (2);

f. affirmative acts to protect Ryan's Trade Secrets this Court may deem just and proper under § 688.003(3); and

g. a finding that Defendants are jointly and severally liable for any damages awarded.

## COUNT VIII – VIOLATION OF THE DEFEND TRADE SECRETS ACT
### ("DTSA"), 18 U.S.C. § 1836
*(Against Defendants Vengoechea and PTF)*

125. Ryan realleges and incorporates paragraphs [1-55; and 112-123] as if fully set forth herein.

126. This claim is brought under federal statutory law.

127. As alleged therein, Ryan owns and possesses its Trade Secrets, which derive independent economic value from not being generally known or readily ascertainable. Ryan took reasonable steps to protect and maintain the secrecy of its Trade Secrets, and Defendants knowingly, willfully, and maliciously misappropriated them without consent or authorization.

128. Ryan is a recognized national and international leader in tax advisory and recovery services, and its Trade Secrets were used in and intended for use in interstate commerce.

129. Ryan operates its tax advisory and recovery services nationwide and

internationally, with offices and branches throughout the United States, Canada, Europe, and Asia-Pacific nations. Ryan's services rely on its Trade Secrets, which it uses and intends for use across its interstate and international network.

130. The Miami office is a part of Ryan's enterprise.

131. Defendants willfully and maliciously misappropriated Ryan's Trade Secrets by improperly acquiring and using them without consent, express or implied, for their benefit and through improper means. The misappropriation was knowing as demonstrated by the petitions Defendants submitted, which retained Ryan's logo in multiple VAB proceedings, and demonstrated by Vengoechea's personal admission upon termination that he "took a risk and it did not go [his] way."

132. Vengoechea knew and PTF had reason to know the Trade Secrets belonged to Ryan, and that they were not obtained by accident or mistake.

133. Defendants did not independently derive the Trade Secrets nor obtain them through lawful means.

134. As set forth above, Defendants have willfully and maliciously misappropriated Ryan's Trade Secrets. As a direct result of Defendants' misappropriation, Ryan has suffered and will continue to suffer damages.

135. Consequently, Ryan is entitled to

   a. an award of damages for the actual loss caused by Defendants' misappropriation of its Trade Secrets and damages for unjust enrichment not addressed in actual loss computations under 18 U.S.C. § 1836(b)(3)(B)(i)(I-II);

   b. alternatively, an award of damages through the imposition of liability for a reasonable royalty for Defendants' the misuse and misappropriation of Ryan's Trade Secrets

should they be hard to quantify under § 1836(b)(3)(B)(ii);

   c.  an award for exemplary damages not more than two times the amount of damages in subsection (b) as provided for in 18 U.S.C. § 1836(b)(3)(C) for Defendants' willful and malicious misappropriation;

   d.  an award of reasonable attorneys' fees under § 1836(b)(3)(D);

   e.  a preliminary and permanent injunction enjoining Defendants or anyone acting on their behalf from any further misappropriation, use or disclosure of Ryan's Trade Secrets under § 1836(b)(3)(A); and

   f.  a finding that Defendants are jointly and severally liable for any damages awarded.

## COUNT IX – INTENTIONAL MISREPRESENTATION *(Fraudulent Inducement)*
### *(Against Defendant Vengoechea)*

136.    Ryan realleges and incorporates paragraphs [1-55] as if fully set forth herein.

137.    This claim is brought under Florida common law.

138.    Vengoechea falsely represented, including on or about November 20, 2022 and again in December 2022, that PTF was not and would not be a competitor to Ryan as it only handled small or unwanted matters from his prior employer and that Vengoechea's involvement with PTF would not impact Ryan's business. These representations were false when made and concerned existing and material facts. Vengoechea knew the representations were false when he made them and did so intending for Ryan to rely on these representations in extending its employment offer to him.

139.    But for Vengoechea's representations, Ryan would not have hired him as Director of Commercial Property Tax, granted him access to confidential systems, sponsored his leadership trajectory, and entrusted him to run the Miami office—only to later discover, through extensive public records requests following concerns after his hire, that Vengoechea had been filing and

arguing hundreds of petitions through PTF while employed by Ryan and during business hours.

140.     Ryan reasonably relied on Vengoechea's false representations in deciding to hire him and would not have done so had it known the truth.

141.     Vengoechea's post-termination admission that he "took a risk" coupled with the vast scope of his misappropriation throughout his employment also demonstrates his knowledge that his earlier assurances were false when made.

142.     As a direct and proximate result of these misrepresentations, Ryan has suffered substantial damages including diverted opportunities, lost revenues, and harm to its goodwill independent of any trade secret claim.

143.     Accordingly, Ryan is entitled to and seeks compensatory damages, punitive damages, and all other appropriate relief.

### COUNT X – CIVIL CONSPIRACY
*(Against Defendants Vengoechea and PTF)*

144.     Ryan realleges and incorporates paragraphs [1-55, 94-102, 103-111, 112-124, 125-135, and 136-143] as if fully set forth herein.

145.     This claim is brought under Florida common law.

146.     Vengoechea entered into an agreement with at least one other person or entity, including PTF, and persons acting for or with PTF, through coordinated conduct and mutual participation, to accomplish unlawful acts, including the underlying torts alleged herein in Counts V, VI, VII, VIII, and IX (Tortious Interference with Business Relationships; Conversion; FUTSA, DTSA, and Intentional Misrepresentation).

147.     In furtherance of the conspiracy, Vengoechea used his position and access while employed by Ryan to identify incoming opportunities he was interested in for himself and PTF. Defendants then channeled those opportunities away from Ryan and to PTF.

148. Defendants committed overt acts in furtherance of the conspiracy, including communicating with clients and prospective clients and directing and diverting work away from Ryan, causing Ryan's goodwill to be diverted as well.

149. These acts were intentional, willful, and without justification.

150. The conspiring Defendants are jointly and severally liable for all damages caused to Ryan by their agreement to engage in and take collective actions in furtherance of their common plan.

151. As a proximate result of the overt acts taken in furtherance of the conspiracy, Ryan has suffered substantial damages including diverted business opportunities, lost revenue, and harm to goodwill. The conspiring Defendants are jointly and severally liable for Ryan's damages— including compensatory damages and punitive damages, together with equitable relief including disgorgement, restitution, and other appropriate equitable relief.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable as of right by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ryan, LLC, respectfully requests that this Court enter judgment in its favor and against Defendants Andres E. Vengoechea and Property Tax Force, LLC, and award the following relief:

(i) Preliminary and permanent injunctive relief under 18 U.S.C. § 1836, and Fla. Stat. § 688.003, and as necessary to enforce Defendant Vengoechea's contractual obligations and applicable post-employment covenants, including relief: (a) prohibiting Defendants' and those acting in concert with them, including officers, agents, employees, successors, and assigns, from any further use or misappropriation of Plaintiff's Trade Secrets; and (b) requiring the return of all of

Plaintiff's materials and certified deletion of copies;

(ii)     An award of compensatory and punitive damages in an amount to be proven at trial, including lost revenues and profits;

(iii)    An award of equitable monetary relief, including disgorgement and restitution of compensation, benefits, and profits obtained through conduct alleged, together with the imposition of a constructive trust and an accounting;

(iv)     Statutory remedies under 18 U.S.C. § 1836(b)(3) and Fla. Stat. §§ 688.004-.005, including damages, exemplary damages for willful and malicious misappropriation, attorneys' fees, and affirmative acts to protect Plaintiff's Trade Secrets;

(v)      Costs, post-judgment interest as permitted by contract and law, including 28 U.S.C. § 1961, and any pre-judgment interest available by contract or law;

(vi)     A finding of joint and several liability to the extent permitted by law;

(vii)    Plaintiff's reasonable attorneys' fees and costs available by contract and applicable law, including Tex. Civ. Prac. & Rem. Code § 38.001(8), 18 U.S.C. § 1836, and Fla. Stat. § 688.005; and

(viii)   Such other and further relief as this Court deems just and proper.

February 20, 2026                                    Respectfully,

                                                     **DLA PIPER LLP (US)**

                                                     */s/ Christopher G. Oprison*
                                                     Christopher G. Oprison, Esq.
                                                     Florida Bar Number: 122080
                                                     chris.oprison@dlapiper.com
                                                     200 South Biscayne Boulevard
                                                     Suite 2500
                                                     Miami, Florida 33131
                                                     Telephone: (305) 423-8522